**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE LAGUNA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** |
| | ) | |
| **NORTHWESTERN UNIVERSITY,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, Charlotte Laguna, by and through her attorneys, Peter M. Katsaros and Gillian G. Lindsay of Golan Christie Taglia LLP, and hereby files the instant Complaint against Defendant, Northwestern University, and states as follows:

### NATURE OF THE CASE

1.    Plaintiff, Charlotte Laguna ("Charlotte"), a qualified individual with a vision disability, was working towards a Master's in speech, language, and learning at Northwestern University ("NU"). In the midst of her studies, she fell on campus and suffered a traumatic brain injury that exacerbated her disability.

2.    Charlotte provided NU with an accommodation letter from her treating physician. Charlotte repeatedly communicated with the AccessibleNU office ("AccessibleNU") to obtain reasonable accommodations for her disability—including enlarged course and testing materials, PDF's of course and testing materials in advance (so she could enlarge the materials herself at her own expense), and additional time to complete visual tasks.

3.    Rather than accommodate Charlotte and allow an eager student to thrive, NU disregarded and dismissed her. AccessibleNU admitted to being too overwhelmed and

understaffed to meet the needs of each student with disabilities. Charlotte was told to take responsibility for her own disability.

4.      NU failed to accommodate and discriminated against Charlotte. NU actively discouraged her from completing her studies and encouraged her to pursue a less strenuous career path. Charlotte could not succeed without reasonable accommodations. As a result she was compelled to leave her graduate program—despite having more than $80,000.00 of student loan debt.

## PARTIES

5.      Plaintiff Charlotte Laguna is a former Northwestern University graduate student.

6.      Defendant Northwestern University is a private, not-for-profit, nonsectarian, coeducational institution based in Evanston, Illinois.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because all of the acts and omissions giving rise to this action occurred in the Northern District of Illinois.  28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9.      Charlotte was an NU graduate student working towards a Master's degree in speech, language, and learning.

10.      Charlotte has a vision disability, which was exacerbated by a traumatic brain injury.

2

11.     In January 2015, Charlotte slipped on NU's campus and hit the right side of her face and head on the floor.

12.     Charlotte was concussed and diagnosed with significant regular astigmatism and photophobia.

13.     Charlotte suffered from light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

14.     Charlotte took medical leave from her studies for the winter quarter of 2015 to focus on her health and engage in vestibular therapy.

15.     Charlotte resumed her coursework in the spring of 2015.

16.     Before starting the semester, Charlotte submitted a request for accommodation to her Program Director.

17.     Around this time, Charlotte was advised and encouraged to join the Multidisciplinary Team of her graduate program.

18.     Unbeknownst to Charlotte, the Multidisciplinary Team requires scoring evaluations using numerous charts and tables.

19.     The program also required Charlotte to score vision related tests that she herself could not complete.

20.     Charlotte communicated with the AccessibleNU about her disability and requested accommodations.

21.     She needed course materials provided in enlarged print.

22.     Despite the reasonableness of Charlotte's request, she often settled for receiving PDF copies of the materials in advance so she could enlarge them herself at her own expense.

23.     Even with Charlotte's proactive involvement, NU frequently failed to provide

scoring forms and other printed documentation in a timely and workable format.

24.     Complicating matters, Charlotte's contact at AccessibleNU (Clay Littrell) left on February 13, 2015 and was not immediately replaced.

25.     Without accommodations, Charlotte struggled to complete her coursework.

26.     In the middle of the spring quarter in 2015, she met with a supervisor on the Multidisciplinary Team to discuss her performance.

27.     Charlotte repeated her requests and emphasized the need for accommodations given her visual difficulties in the clinic.

28.     Her requests were not granted.

29.     Charlotte was discouraged but she continued to advocate for herself.

30.     In March 2015, she obtained an accommodation letter from Dr. Christine Lee ("Dr. Lee") to explain why Charlotte needed enlarged materials and additional time to complete visual tasks. A copy of the March 2015 letter is attached hereto as **Exhibit A**.

31.     Dr. Lee's letter explains what tasks were more difficult for Charlotte because of her disability and what accommodations were needed for Charlotte to continue her schoolwork.

32.     Dr. Lee's recommended accommodations were modest, *e.g.*, magnification sheets or comparable device to enhance text, reduced exposure to fluorescent lights—increased natural light or use of tinted glasses, additional time to complete visual tasks, and additional care in light of her concussion symptoms.

33.     Rather than provide these simple accommodations and allow Charlotte to complete her program—or at least the quarter, NU representatives pressured Charlotte to discontinue her studies.

34.     Charlotte took additional medical leave to continue her medical care.

35.     On November 18, 2015, Dr. Dominick Maino, Charlotte's treating physician, recommended: continued visual therapy once a week, large print text (minimum of 16 point, but preferably 18 point), fonts with wide or evenly spaced letters (*e.g.*, `Courier`, Cambria, and **Georgia**), increased spacing between lines (minimum of 1.5), bold lettering, use of colored paper (green, salmon not glossy paper), frequent breaks from reading and computer tasks, limited time in fluorescently lit environments (use of a hat or visor under fluorescent lights), low lighting on computer and tablet screens, and frequent use of artificial tear eye drops. A copy of the November 2015 Report is attached hereto as **Exhibit B**.

36.     Charlotte returned to NU for the 2016 winter quarter.

37.     Before the quarter began, Charlotte submitted her accommodation request to AccessibleNU, including a copy of her doctor's diagnoses and recommendations.

38.     Charlotte was provided copies of the original materials in advance and enlarged the text herself—at her own expense.

39.     With this minor accommodation, Charlotte successfully completed the 2016 winter quarter.

40.     The only accommodation Charlotte needed was advanced PDF copies of the materials and additional time on one (1) clinical evaluation.

41.     Charlotte felt encouraged and enrolled as a fulltime student for the 2016 spring quarter.

42.     In March, she attempted to schedule a joint meeting with her Program Director, AccessibleNU, and her clinic supervisor to discuss necessary accommodations, especially with respect to clinical work.

43.     They did not schedule a meeting until after her first clinical evaluation was

completed without enlarged materials.

44.     In late March, Charlotte's clinical supervisor told Charlotte that AccessibleNU would enlarge all materials used in clinical testing.

45.     Concerned by the inconsistency with the prior quarter's accommodations, and believing a mistake was made, Charlotte contacted her Program Director and AccessibleNU to confirm.

46.     The Director of AccessibleNU informed Charlotte she would receive manuals and protocols in PDF form and that she could enlarge them herself.

47.     Less than a week before Charlotte's next clinical evaluation, Charlotte had not received copies of the tests she was assigned, so she contacted AccessibleNU repeatedly.

48.     The day before her clinical evaluation, she made a final request for the testing materials.

49.     With less than twenty-four (24) hours to prepare, AcccessibleNU provided some, but not all, of the testing materials.

50.     They also offered her a portable magnifier to enlarge the materials.

51.     Having no other option, Charlotte accepted the portable magnifier, but later discovered the device was only compatible with PCs.

52.     Charlotte has a Mac so the portable magnifier was inoperative.

53.     Without receiving her necessary accommodations, Charlotte felt anxious. She spoke with her supervisor before beginning the clinical evaluation.

54.     Charlotte told her supervisor that AccessibleNU did not provide all of the materials for enlargement and that the portable magnifier was not compatible with her Mac.

55.     After explaining NU's failure to provide reasonable accommodations, Charlotte

requested additional time to complete the evaluation in the event she had difficulty seeing the test materials.

56.     Charlotte's request was denied; she continued with the evaluation to the best of her ability.

57.     A week later, Charlotte met with her clinical supervisor who informed her that the clinical evaluation did not go well.

58.     Once again, Charlotte explained that NU did not provide her necessary accommodations.

59.     Charlotte met with representatives from her program and AccessibleNU.

60.     Rather than address NU's failures of the week before, NU absolved itself of responsibility and unfairly placed blame on Charlotte.

61.     One AccessibleNU representative admitted she failed to send the test protocols because she was overwhelmed by the demands of NU's students with disabilities.

62.     Her Program Director dismissed Charlotte's vision disability and her efforts to obtain accommodations by stating Charlotte needed to take responsibility for her own disability.

63.     After the meeting, NU gave cursory attention to Charlotte's needs.

64.     Program supervisors usually provided materials in advance.

65.     However, Charlotte often received the materials with limited time to enlarge them and prepare for clinical evaluations.

66.     Charlotte felt extreme stress, pressure, and anxiety.

67.     She worked at a frantic pace to have course materials she could see.

68.     Obtaining accommodations for her disability was a constant struggle; she felt unsupported by her department and the administration.

69.     She suffered multiple anxiety attacks and severe stress.

70.     In the middle of the 2016 spring quarter, she was not performing well.

71.     Rather than communicate with Charlotte to provide the necessary accommodations, NU pressured her to leave the program.

72.     Rather than meet the individual needs of a qualified and eager student with disabilities, NU demonstrated deliberate indifference to her reasonable requests for accommodation.

73.      After months of fighting for her reasonable accommodations, NU's pressure to discontinue her studies prevailed.

74.     Charlotte could not succeed without her accommodations, so she left NU with $80,000.00 in student loan debt and no graduate degree.

**COUNT I**
**29 U.S.C. § 794a**
**Discrimination**

75.     Charlotte realleges and incorporates Paragraphs 1-74 as if fully restated herein.

76.     Upon information and belief, NU receives federal financial assistance.

77.     Charlotte suffers from a vision disability which manifests through light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

78.     Charlotte's disability substantially limits one or more major life activities, including but not limited to seeing and reading.

79.     Charlotte was accepted to and is qualified to participate in the speech, language, and learning Master's program and the Multidisciplinary Team at NU.

80.     Charlotte was capable of completing her Master's program if NU accommodated

her reasonable requests of receiving advanced PDF copies of the course materials and additional time on clinical evaluations.

81.     Rather than accommodate Charlotte's reasonable requests, NU counseled Charlotte towards more restrictive career options and encouraged her to leave her Master's program.

82.     Upon information and belief, NU did not counsel students without disabilities to abandon their studies and pursue other career options.

83.     As a result of NU's failure to accommodate, Charlotte suffered emotional distress, loss of educational opportunities and incurred $80,000.00 in student loan debt.

WHEREFORE, Plaintiff, Charlotte Laguna, respectfully requests compensatory damages in an amount to be proven at trial, along with attorneys' fees and costs and any other relief this Honorable Court deems just and appropriate.

## COUNT II
### 29 U.S.C. § 794a
### Failure to Accommodate

84.     Charlotte realleges and incorporates Paragraphs 1-83 as if fully restated herein.

85.     Upon information and belief, NU receives federal financial assistance.

86.     Charlotte suffers from a vision disability which manifests through light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

87.     Charlotte's disability substantially limits one or more major life activities, including but not limited to seeing and reading.

88.     Charlotte was accepted to and is qualified to participate in the speech, language, and learning program and the Multidisciplinary Team at NU.

89.     NU is obligated to make reasonable accommodations to make sure their programs and activities are fully accessible to students with disabilities.

90.     NU was aware of Charlotte's disability.

91.     Charlotte provided NU with proof of her disability and requested reasonable accommodations of advanced PDF copies of the course materials and additional time on clinical evaluations.

92.     Provision of Charlotte's request for accommodations would not fundamentally alter the nature of the services, facilities, privileges, advantages, or accommodations NU offers.

93.     The requested accommodations would not create an undue financial or administrative burden for NU.

94.     Charlotte's requests for advanced PDF copies of the course materials and additional time on clinical evaluations were reasonable.

95.     NU failed to offer such examinations and courses in a manner accessible to Charlotte.

96.     NU failed to offer alternative accessible arrangements for Charlotte.

97.     NU failed to reasonably accommodate Charlotte's disability.

98.     As a result of NU's failure to accommodate, Charlotte suffered emotional distress, loss of educational opportunities and $80,000.00 in student loan debt in a program she was compelled to leave.

WHEREFORE, Plaintiff, Charlotte Laguna, respectfully requests compensatory damages in an amount to be proven at trial, along with attorneys' fees and costs and any other relief this Honorable Court deems just and appropriate.

## COUNT III
### 42 U.S.C.A. §12101 *et seq.*
### Discrimination

99.     Charlotte realleges and incorporates Paragraphs 1-98 as if fully restated herein.

100.    Charlotte suffers from a vision disability which manifests through light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

101.    Charlotte's disability substantially limits one or more major life activities, including but not limited to seeing and reading.

102.    Charlotte was accepted to and is qualified to participate in the speech, language, and learning program and the Multidisciplinary Team at NU.

103.    NU is a place of public accommodation under the ADA.

104.    Charlotte was capable of completing her Master's program if NU accommodated her reasonable requests of receiving advanced PDF copies of the course materials and additional time on clinical evaluations.

105.    Rather than accommodate Charlotte's reasonable requests, NU counseled Charlotte towards more restrictive career options and encouraged her to leave her Master's program.

106.    Upon information and belief, NU did not counsel students without disabilities to abandon their studies and pursue other career options.

107.    As a result of NU's failure to accommodate, Charlotte suffered emotional distress, loss of educational opportunities and $80,000.00 in loan debt.

WHEREFORE, Plaintiff, Charlotte Laguna, respectfully requests declaratory and injunctive relief requiring Northwestern University to allow her to participate in her graduate

studies program with the provision of the necessary reasonable accommodations, and to credit her financial aid for the amount of tuition Northwestern University failed to refund for the quarter Northwestern University discriminated against Charlotte Laguna, along with attorneys' fees and costs and any other relief this Honorable Court deems just and appropriate.

**COUNT IV**
**42 U.S.C.A. § 12101 *et seq.***
**Failure to Accommodate**

108.     Charlotte realleges and incorporates Paragraphs 1-107 as if fully restated herein.

109.     Charlotte suffers from a vision disability which manifests through light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

110.     Charlotte's disability substantially limits one or more major life activities, including but not limited to seeing and reading.

111.     Charlotte was accepted to and is qualified to participate in the speech, language, and learning program and the Multidisciplinary Team at NU.

112.     NU is a place of public accommodation for purposes of the ADA.

113.     NU is obligated to make reasonable accommodations to make sure their programs and activities are fully accessible to students with disabilities.

114.     NU was aware of Charlotte's disability.

115.     Charlotte provided NU with proof of her disability and requested reasonable accommodations of advanced PDF copies of the course materials and additional time on clinical evaluations

116.     Provision of Charlotte's request for accommodations would not fundamentally alter the nature of the services, facilities, privileges, advantages, or accommodations NU offers.

117.    The requested accommodations would not create an undue financial or administrative burden for NU.

118.    Charlotte's requests for advanced PDF copies of the course materials and additional time on clinical evaluations were reasonable.

119.    NU failed to offer such examinations and courses in a manner accessible to Charlotte.

120.    NU failed to offer alternative accessible arrangements for Charlotte.

121.    NU failed to reasonably accommodate Charlotte's disability.

122.    As a result of NU's failure to accommodate, Charlotte suffered emotional distress, loss of educational opportunities and $80,000.00 in loan debt.

WHEREFORE, Plaintiff, Charlotte Laguna, respectfully requests declaratory and injunctive relief requiring Northwestern University to allow her to participate in her graduate studies program with the provision of the necessary reasonable accommodations, and to credit her financial aid for the amount of tuition Northwestern University failed to refund for the quarter Northwestern University failed to reasonable accommodate Charlotte Laguna's disability, along with attorneys' fees and costs and any other relief this Honorable Court deems just and appropriate.

**COUNT V**
**42 U.S.C.A. § 12101** *et seq.*
**Failure to Make Exams and Courses Accessible**

123.    Charlotte realleges and incorporates Paragraphs 1-122 as if fully restated herein.

124.    Charlotte suffers from a vision disability which manifests through light sensitivity, nausea, and visual fatigue, difficulty with visual tracking and difficulty reading text and charts.

125.    Charlotte's disability substantially limits one or more major life activities, including but not limited to the activity of seeing and reading.

126.    Charlotte was accepted to and is qualified to participate in the speech, language, and learning program and the Multidisciplinary Team at NU.

127.    NU offers examinations and courses relating to applications, licensing, certification, and/or credentialing for post-secondary education, professional, and trade purposes.

128.    NU is obligated offer exams and courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

129.    NU was aware of Charlotte's disability.

130.    Charlotte provided proof of her disability and requested reasonable accommodations, including: advanced PDF copies of the course materials and additional time on clinical evaluations.

131.    Provision of Charlotte's request for accommodations would not fundamentally alter the nature of the services, facilities, privileges, advantages, or accommodations NU offers.

132.    The requested accommodations would not create an undue financial or administrative burden for NU.

133.    Charlotte's requests for advanced PDF copies of the course materials and additional time on clinical evaluations were reasonable.

134.    NU failed to offer such examinations and courses in a manner accessible to Charlotte.

135.    NU failed to offer alternative accessible arrangements for Charlotte.

136.    NU failed to reasonably accommodate Charlotte's disability.

137.    As a result of NU's failure to offer alternative accessible arrangements, Charlotte suffered emotional distress, loss of educational opportunities and $80,000.00 in loan debt.

WHEREFORE Plaintiff, Charlotte Laguna, respectfully requests declaratory and injunctive relief requiring Northwestern University to offer her to graduate studies program in a manner that is accessible to Charlotte Laguna with the provision of the necessary reasonable accommodations, and to credit her financial aid for the amount of tuition Northwestern University failed to refund for the quarter Northwestern University failed to offer examinations and coursework in manner accessible to Charlotte Laguna, along with attorneys' fees and costs and any other relief this Honorable Court deems just and appropriate.

Dated: August 16, 2017                          Respectfully submitted,

                                                CHARLOTTE LAGUNA,
                                                Plaintiff,


                                                By  /s/ *Peter M. Katsaros*
                                                       One of his Attorneys

Peter M. Katsaros, Esq. (ARCD# 3122661)
Gillian G. Lindsay, Esq. (ARDC# 6298511)
GOLAN CHRISTIE TAGLIA LLP
70 West Madison Street, Suite 1500
Chicago, Illinois 60602
(312) 263-2300
pmkatsaros@golanchristie.com
gglindsay@golanchristie.com